UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHGIAN
NORTHERN DIVISION

_____

**AMY JERE** and **DANIAL JERE**,

    Plaintiffs,

v.

**SUPERIOR TOWNSHIP;**
**THE BOARD OF SUPERIOR TOWNSHIP;**
**RICHARD PHILLIPS**, Superior Township Supervisor, in his personal and official capacities; **SUSANNE KNISKERN**, Superior Township Treasurer, in her personal and official capacities; **MARY JO HARRIS**, Superior Township Clerk, in her personal and official capacities; and **JOHN WAISANEN**, Superior Township Trustee, in his personal and official capacities,

    Defendants.

Case No. 2:23-CV-178

Hon. _____

_____

## COMPLAINT AND JURY DEMAND
_____

### COMPLAINT

Plaintiffs Amy Jere and Danial Jere, by and through their attorneys, Pinsky Smith, PC, state as follows:

### JURISDICTION, VENUE, AND PARTIES

1. This is an action seeking to remedy violations of Plaintiff Amy Jere's right to Due Process of Law under the Fourteenth Amendment of the Constitution,

1

pursuant to 42 U.S.C. § 1983, as well as violations of Plaintiffs' rights under Michigan's Whistleblowers' Protection Act, Mich. Comp. Laws § 15.361 *et seq.* ("WPA"); and Plaintiff Amy Jere's rights under Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.* ("ELCRA"), and the common law tort of defamation.

2. Jurisdiction and venue are proper in this Court.

3. Plaintiff Amy Jere is a female individual who resides in Chippewa County, Michigan.

4. Plaintiff Danial Jere is a male individual who resides in Chippewa County, Michigan. He is married to Plaintiff Amy Jere.

5. Defendant Superior Township ("Township") is a local unit of government organized pursuant to the laws of the state of Michigan and was an employer of Plaintiffs. The Township conducts its business within the Western District of Michigan.

6. Defendant Board of Superior Township ("the Board") is the governing body for the Township, and conducts its business within the Western District of Michigan.

7. Defendant Richard Phillips ("Phillips") is the Supervisor of Superior Township. He resides within the Western District of Michigan.

8. Defendant Susanne Kniskern ("Kniskern") is the Treasurer of Superior Township. She resides within the Western District of Michigan.

9. Defendant Mary Jo Harris ("Harris") is the Clerk of Superior Township. She resides within the Western District of Michigan.

10. Defendant John Waisanen ("Waisanen") is a Trustee of Superior Township. He resides within the Western District of Michigan.

11. The amount in controversy exceeds $25,000, exclusive of costs and attorney fees, and the matter is otherwise within the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

12. Plaintiff Amy Jere worked as the fire chief for the Superior Township Fire Department in Chippewa County ("the Fire Department"). Ms. Jere was appointed as the fire chief by Defendant Richard Phillips, the Township Supervisor, after a vote of the members of the Fire Department selected her. Defendant Board confirmed the decision in February 2018. Ms. Jere started the position on March 1, 2018.

13. Plaintiff Danial Jere also worked for the Fire Department. Most recently, Mr. Jere worked as the training and safety officer for the department. Although the Fire Department is organized as a "volunteer" firefighting unit, both Plaintiffs were paid and received other compensatory benefits.

14. In addition to working for the Fire Department, Plaintiffs also own and operate a farm as the main source of their income.

15. As members of the Fire Department, Mr. Jere and Ms. Jere were employees of the Township. The Board, and more directly the Supervisor, supervises the Fire Department.

16. As fire chief, Ms. Jere had the authority to appoint members of the Fire Department. Section 3, Article 1 of the Township Ordinance for the Organization of the Volunteer Fire Department sets for the qualifications for membership in the Fire Department. It gives the chief the authority to appoint members who are "able-bodied" Township residents. It provides that the determination of whether candidates are "able-bodied" shall be determined by the chief in a manner approved by the Board.

17. In early 2023, two Superior Township residents applied for membership in the Fire Department: Jeremy Spencer and Mike Greene. During her five-year tenure, Ms. Jere followed a standard process for hiring new applicants. The applicant would come in to meet the members of the Fire Department; assuming the applicant met the qualifications for membership, Ms. Jere would assign the applicant equipment and a locker. Thereafter, at its next meeting, the Board would vote to approve the applicant as a member of the Fire Department.

18. Ms. Jere conducted her normal process for evaluating Mr. Spencer and Mr. Greene. After finding that they both met the qualifications for membership, she assigned them each a locker and equipment.

19. At some point after Ms. Jere concluded her evaluation of Mr. Spencer's application, Defendant Kniskern and Mr. Waisanen asked Mr. Spencer to participate in an interview to consider whether Mr. Spencer's application to join the Fire Department should be granted, without Ms. Jere participating. This was the first time during Ms. Jere's term as chief that she was aware of a candidate being

interviewed in this manner.

20.     As the training and safety officer for the Fire Department, Mr. Jere had significant concerns that the Township did not provide the legally-required equipment to the Fire Department which would comply with safety regulations of Michigan Occupational Safety and Health Administration (MIOSHA).  Mr. Jere also had significant concerns that the Township expected and required the Fire Department to take on non-emergency tasks without proper safety equipment and without the ability to comply with MIOSHA safety regulations, like hanging lights for holidays and celebrations. Mr. Jere filed reports with MIOSHA related to these and other concerns, including the Fire Department's inability to conduct required confined space training, which was not performed because Defendant Phillips objected to it.

21.     When Mr. Jere filed a report with MIOSHA based on the Township's failure to adhere to safety protocols when hanging banners and Christmas lights, MIOSHA advised Defendant Phillips of the report. Upon information and belief, MIOSHA informed Defendant Phillips that Mr. Jere was correct about his concern, that the Township could no longer hang banners and Christmas lights without proper equipment and safety protocols, and that the Township could face a significant fine if it did so.

22.     Similarly, Ms. Jere also had significant concerns about the Fire Department's adherence to safety protocols resulting from the Township's failure to adequately fund the necessary safety equipment. For example, Ms. Jere raised the

following concerns because the firefighters did not have adequate safety equipment: the turnout gear provided to firefighters was more than 10 years old; the helmets were more than 20 years old; and breathing apparatuses that firefighters use when going into a fire, known as air packs, were expired and out of date. Ms. Jere was also concerned because the Fire Department did not require physicals or fitness testing for the members because the Board and Defendant Phillips would not permit it, and did not test the hoses or ladders because Defendant Phillips felt it was unnecessary.

23. On December 20, 2022, Ms. Jere made a presentation to the Board at their regular meeting in which she discussed her concerns about the safety deficiencies and regulatory violations at the Fire Department caused by Defendants' resistance to allocating additional funds or changing practices.

24. In or about January or early February 2023, Ms. Jere had a conversation with Defendant Phillips, and convinced him to spend money on a needed piece of safety equipment. Defendant Phillips agreed orally in this conversation that Ms. Jere could make the purchase on behalf of the Township Fire Department.

25. On February 28, 2023, the Board held a township meeting. Mr. Jere and Ms. Jere were both unable to attend the meeting due to schedule conflicts. The Board voted to hold off on approving Plaintiff's request for additional funding of the Fire Department until the Plaintiff could present at a future Board meeting.

26. In March 2023, Ms. Jere hired an independent agency to review the

Fire Department's compliance with safety and regulatory requirements. Ms. Jere intended to present the findings of the independent agency to the Board, and upon information and belief, the Board was aware of Ms. Jere's intent. But the Board then cancelled its March and April regular meetings.

27. Ms. Jere attended the Board's regular meeting on May 10, 2023, but Defendants declined to permit her to present to the Board on the safety issues plaguing the Fire Department. Instead, Defendant Phillips told Ms. Jere that he would place her on the agenda for the next regular meeting in June.

28. Before the June meeting, however, the Board learned that Mr. Jere had filed a complaint with MIOSHA about the safety regulation violations the Township committed while hanging banners and decorations. On May 23, 2023, the Board held a special meeting to discuss firing Mr. Jere. Upon information and belief, the Board intended to fire Mr. Jere in retaliation for his report of violated safety regulations to MIOSHA. Attempting to find a sham reason to state as the reason for his termination, the Board proposed firing Mr. Jere based on a "code of ethics" and a "code of conduct" that did not exist. When the Township's counsel advised the Board that they could not fire Mr. Jere based on non-existent codes, they voted to put Mr. Jere on probation for one year, allegedly because of other events that transpired at an earlier January meeting.

29. On May 31, 2023, Ms. Jere reported to State of Michigan Fire Marshal Kevin Sehlmeyer on her concerns that the Fire Department was not providing adequate safety equipment as required by law and regulation. He advised that Ms.

Jere should file a formal complaint about these issues.

30. On June 16, 2023, the Board held another special meeting for the purpose of terminating Ms. Jere as chief. However, the Board did not inform Ms. Jere that the meeting had been scheduled, or that its purpose was to discuss her termination. At the meeting, the Board approved security cameras in fire hall and town hall, approved the appointment of Jeremy Spencer to the Fire Department, rejected the results from the Fire Department re-election of Ms. Jere as chief, and voted to terminate Ms. Jere as chief. Defendants Phillips, Kniskern, Harris, and Waisanen all voted to terminate Ms. Jere as chief after a meeting that lasted for a total of 24 minutes. Paul Fox, another Trustee, was not present at this board meeting and thus did not vote.

31. During the June 16, 2023 meeting, the Board cited three provisions of the Township's ordinances related to the Fire Department as alleged reasons to fire Ms. Jere: Section 1 article 2; Section 3 article 1; and Section 4 article 2.

32. Section 1, Article 2 sets forth the process for election and removal of the Fire Department chief. It repeatedly refers to the chief by male pronouns, and says that the chief "shall have ability to command men and hold their respect and confidence." In remarks of the Board members during the public meeting where the vote was taken to fire Ms. Jere, the Board interpreted this language as requiring a male chief for the Fire Department and stated that Ms. Jere's female sex was a reason to fire her.

33. Section 1, Article 2 further states that the chief of the Fire Department

8

shall be removed only for just cause and after a hearing before the Fire Department and the Township Board. Neither the Fire Department nor the Board ever provided prior notice of alleged just cause for her termination nor held a hearing on the firing of Ms. Jere where she was permitted to be heard after notice of the alleged just cause reasons for her termination as fire chief.

34.  Section 3, Article 1 sets forth the qualifications for membership in the Fire Department. It gives the chief the authority to appoint members who are "able-bodied" Township residents. It provides that the determination of whether candidates are able-bodied shall be determined by the chief in a manner approved by the Board. However, the Board alleged Ms. Jere had somehow violated the Township ordinance in her handling of accepting new members to the Fire Department by issuing a locker and equipment to new members prior to a Board vote, which by pattern and practice had been an unnecessary formality in the past.

35.  Finally, the Board stated that Ms. Jere had spent $4,182 without Board approval, which represented the money that Defendant Phillips orally approved for the purchase of new Fire Department equipment when Ms. Jere spoke with him. Defendants repeatedly couched their language to insinuate that Ms. Jere misappropriated the money, which was false. Instead, as Defendants were aware, Ms. Jere spent the funds on Fire Department equipment that Defendant Phillips orally approved.

36.  After Defendants terminated Ms. Jere, all of the firefighters in the Fire Department quit in protest, except for one whose mother is on the Board.

37. At the following Board meeting on June 27, 2023, Mr. Fox was again absent. Defendant Kniskern made a motion to accept Mr. Fox's resignation from the Board. The motion passed unanimously.

### COUNT I – VIOLATION OF DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT OF THE CONSTITUTION – AS TO AMY JERE

38. Plaintiff relies on all prior allegations as if restated herein.

39. Township Ordinance Section 1, Article 2 states that the chief of the Fire Department shall be removed only for just cause and after a hearing before the Fire Department and the Township Board. Neither the Fire Department nor the Board ever provided prior notice of alleged just cause for her termination nor held a hearing on the alleged reasons for termination of Ms. Jere.

40. Plaintiff Amy Jere has a property interest in her employment as fire chief pursuant to the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983, and *Loudermill v. Cleveland Board of Education*, 470 U.S. 532 (1985) ("*Loudermill*"). Defendants could only lawfully terminate Ms. Jere's job position if they did so after providing her required due process of law, and if they had a "just cause" reason for firing her.

41. On June 16, 2023, Defendants discharged Plaintiff without providing her with either a fair pre-termination notice and hearing, and/or post-termination hearing, contrary to the Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983; and *Loudermill*, thereby depriving her of due process of law.

42. As a result of Defendants' failure to provide a fair pre-termination and/or post-termination due process, Defendants are liable to Plaintiff for damages,

including lost wages and benefits; future lost wages and benefits and/or reinstatement to her prior or equivalent position; compensatory damages for emotional and mental distress; attorney fees and costs; and punitive damages.

43. Similarly, as a result of Defendants' failure to have sufficient cause and reason for Plaintiff's termination, Defendants are liable to Plaintiff for damages, including lost wages and benefits; future lost wages and benefits and/or reinstatement to her prior or equivalent position; compensatory damages for emotional and mental distress; attorney fees and costs; and punitive damages.

WHEREFORE, Plaintiff Amy Jere requests that the Court restore her to her job position and grant her relief in an amount as determined by a jury, including reasonable attorney's fees and costs, plus interest and costs, pursuant to 42 U.S.C. § 1988.

## COUNT II – WHISTLEBLOWERS' PROTECTION ACT CLAIM

44. Plaintiffs rely on the allegations of all prior paragraphs, as if they were restated herein.

45. Plaintiffs are "employees" as defined by WPA.

46. Defendants are an "employer" and "public bodies" as defined by WPA.

47. MIOSHA is a "public body" as defined by WPA.

48. Michigan's Fire Marshal is a "public body" as defined by WPA.

49. Defendants engaged in acts of retaliation toward Plaintiffs because of their reports of violations of law and/or regulations to public bodies, i.e., Defendants, the State Fire Marshal, and MIOSHA.

11

50. Defendants terminated Plaintiff Amy Jere's employment because of Plaintiffs' reports.

51. Defendants' termination of Plaintiff Amy Jere is a violation of WPA, for which Defendants are liable to Plaintiffs for damages under WPA.

WHEREFORE, Plaintiffs request that the Court grant the following relief: reinstate Plaintiff Amy Jere to her position as fire chief of Superior Township; award Plaintiffs economic and compensatory damages in an amount that would fully compensate them for the injuries alleged herein resulting from the violation of WPA, including damages for mental anguish and emotional distress; award Plaintiffs exemplary damages; award Plaintiffs costs and reasonable attorney fees; award Plaintiffs such other relief as may be just and equitable.

## COUNT III – VIOLATION OF ELCRA – AS TO AMY JERE

52. Plaintiff Amy Jere relies on the allegations of all prior paragraphs, as if they were restated herein.

53. Defendants admitted in a public meeting that they fired Plaintiff Amy Jere, at least in part, because she is female, basing their decision on a reading of the Township Ordinances that they determined meant that the fire chief must be a male individual.

54. By firing Amy Jere as fire chief at least in part because she is female, Defendants violated ELCRA, for which Defendants are liable to Plaintiff Amy Jere for damages under ELCRA and other relief.

WHEREFORE, Plaintiff requests that the Court grant the following relief: reinstate Plaintiff Amy Jere to her position as fire chief of Superior Township; award Plaintiff economic and compensatory damages in an amount that would fully compensate her for the injuries alleged herein resulting from the violation of ELCRA, including damages for mental anguish and emotional distress; award Plaintiff exemplary damages; award Plaintiff costs and reasonable attorney fees; award Plaintiff such other relief as may be just and equitable.

PINSKY SMITH, PC
Attorneys for Plaintiffs

Dated: September 13, 2023

By: /s/ Sarah R. Howard
Sarah Riley Howard
146 Monroe Center St NW, Suite 418
Grand Rapids, MI 49503
(616) 451-8496
showard@pinskysmith.com

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiffs hereby demand same.

PINSKY SMITH, PC
Attorneys for Plaintiffs

Dated: September 13, 2023

By: /s/ Sarah R. Howard
Sarah Riley Howard
146 Monroe Center St NW, Suite 418
Grand Rapids, MI 49503
(616) 451-8496
showard@pinskysmith.com